# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN A. SIFFERMAN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 09-1724-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On September 14, 2009, Kathleen A. Sifferman ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Titles II and XVI of the Social Security Act. On March 22, 2010, the Commissioner filed an Answer to the Complaint. On July 22, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. The matter is now ready for decision. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the

Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff was born on May 12, 1968 (AR 123), and was 33 years old on her alleged disability onset date of April 30, 2002. Plaintiff filed applications for Supplemental Security Income and Disability Insurance benefits with a protected filing date of July 19, 2005. (AR 76, 123-30.) Plaintiff claims she is disabled due to anxiety, depression, and a sleeping disorder. (AR 148.) Plaintiff has not engaged in substantial gainful activity since April 30, 2002. (AR 12, 148-49.)

Plaintiff's claim was denied initially on June 7, 2006 (AR 88-92), and on reconsideration on January 12, 2007. (AR 94-98.) Plaintiff filed a timely request for hearing on February 15, 2007. (AR 101.) Plaintiff appeared with counsel and testified at a hearing held on January 25, 2008, before Administrative Law Judge ("ALJ") F. Keith Varni. (AR 41-56.) The ALJ issued an undated decision denying benefits (the "Prior Decision"). (AR 76-84.) On March 18, 2008, Plaintiff filed a timely request for review of the ALJ's decision. (AR 116-18.) On June 20, 2008, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. (AR 85-87.)

The ALJ held a second hearing on March 11, 2009 (AR 57-69), and issued an unfavorable decision on May 22, 2009. (AR 10-18.) The ALJ determined that Plaintiff has the severe impairments of monocular vision, inappropriate somnolence, and a mood disorder, but was capable of performing jobs that exist in significant numbers in the national economy. (AR 12, 17.) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since the date her applications were filed. (AR 18.)

Plaintiff commenced the instant action after the Appeals Council denied her request for review on July 16, 2009. (AR 2-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, there are two disputed issues:

1. Whether the ALJ properly considered the opinion of treating physician Dr. Jesus Bucardo; and

2. Whether the ALJ properly considered Plaintiff's testimony. (JS at 4.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

The Court reverses the ALJ's decision and remands for further proceedings. The ALJ did not provide legally sufficient reasons for rejecting Dr. Bucardo's opinion or for discounting Plaintiff's credibility.

### A. The Sequential Evaluation

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**B.  The ALJ Did Not Properly Evaluate Dr. Bucardo's Opinion.**

Plaintiff argues that the ALJ did not properly evaluate the opinion of her treating physician, Dr. Bucardo. (JS at 5-10, 13-14.) The Court agrees.

**1.  Relevant Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

### 2. Analysis

The record reflects that Plaintiff has been treated for mental health issues for many years. (See, e.g., AR 702 (noting diagnosis of bipolar disorder since 1983).) She has received various diagnoses, including depressive disorder, personality disorder, bipolar disorder, and possible borderline intellectual functioning. (See, e.g., AR 384, 477, 494, 677, 678, 688, 714.) Plaintiff has a long history of taking psychiatric medications. (See, e.g., AR 495-96, 523, 526, 695, 709-10.) She has had episodes of being verbally and physically assaultive. (AR 564-65, 568, 569-70, 571.) She has also had suicidal thoughts and plans, as evidenced by an involuntary hospitalization in August 2003 and a report of planning to stab herself with a screwdriver after a fight with her boyfriend in May 2008. (AR 310, 663.)

Dr. Bucardo appears to have been Plaintiff's primary treating psychiatrist at the Riverside County Department of Mental Health, from June 18, 2007, through at least February 23, 2009. (See AR 678, 693-714; JS at 5.) On February 23, 2009, Dr. Bucardo completed a form stating, among other things, that Plaintiff currently suffered from bipolar disorder and possibly borderline intellectual functioning; she did not show an ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations; Plaintiff continued to have "episodic mood swings, agitation, behavioral [and] emotional outbursts"; Plaintiff "has been unable to hold a job [because of] cognitive impairment and unstable mood/impulsive outbursts"; she could not interact appropriately with strangers, co-workers, or supervisors; and Plaintiff could not complete a forty-hour work week without decompensating. (AR 714.) Dr. Bucardo had previously completed the same form almost identically on two previous occasions, July 14, 2008, and January 28, 2008. (AR 677, 678.) The ALJ vehemently rejected Dr. Bucardo's opinion:

> I have considered the egregiously accommodative, indulgent, and exaggerated form submitted by Dr. Buscardo [*sic*]. It is astounding how any physician could complete a form in that manner to accommodate the claimant with supposed findings that she is hardly competent even for self-care, when the same treating physician's notes . . . are completely to the contrary and themselves thoroughly rebut such gross exaggerations. Dr. Buscardo's [*sic*] statement of disability is completely inconsistent with clinical findings as noted in the most recent mental status evaluations dated September 8, 2008, December 16, 2008, and January 5, 2009. For the time periods in between the claimant would call in medication requests which would be filled without hesitation. There were no progress notes that supported the

     statement of disability completed on February 23, 2009.  All of the
     mental health records are consistently benign and contain mental
     status evaluations that are not consistent with a disabling
     condition (Exhibits 10F, 11F and 14F).

(AR 16 (some citations omitted).)

  Despite its strong language, the ALJ's repudiation of Dr. Bucardo's opinion is not legally sound.  The ALJ essentially provided two reasons for rejecting Dr. Bucardo's opinion: (1) the opinion was not consistent with Dr. Bucardo's own treatment notes; and (2) the opinion was not consistent with the medical evidence as a whole, particularly Exhibits 10F [AR 662-75], 11F [AR 677-78], and 14F [AR 694-712].  As to the first reason, the ALJ mischaracterizes both Dr. Bucardo's February 23, 2009, opinion and his prior treatment notes.  The ALJ stated that Dr. Bucardo opined that Plaintiff "is hardly competent even for self-care" (AR 16), but Dr. Bucardo did not circle the categories of "grooming" or "hygiene" under the list of activities for which Plaintiff "needs assistance," and he noted that Plaintiff is "able to manage own funds in his/her best interest."  (AR 714.)  The ALJ's characterization of Dr. Bucardo's statement of disability as "completely inconsistent with clinical findings" is also belied by the record.  For example, Dr. Bucardo wrote on August 19, 2008, that Plaintiff has been "certified as BP-depressed since 1983 w/ guarde[d] prognosis, unable to work . . . . Impairments include depression, cognitive impairment and hopelessness."  (AR 702.)  On December 16, 2008, Dr. Bucardo wrote that Plaintiff's "Current Baseline" was "Depression, mood swings and agitation episodes about once per week.  Nightly insomnia."  (AR 703.) Treatment goals were listed as decreasing "depression/mood swings and agitation to 1-2 times per month" and decreasing "insomnia to 1-2 times / week."  (Id.)  Contrary to the ALJ's conclusion, these treatment notes suggest that Plaintiff may have had great difficulty maintaining full-time employment.  Therefore, inconsistency with his own treatment notes is not a legitimate reason for discounting Dr. Bucardo's opinion.

The ALJ's second reason for rejecting Dr. Bucardo's opinion was that it was inconsistent with the medical evidence as a whole, particularly Exhibits 10F [AR 662-75], 11F [AR 677-78], and 14F [AR 694-712]. (AR 16.) This reason is also unsound. For example, Exhibit 10F contains a progress note dated May 27, 2008, stating that Plaintiff reported an "episode w/ SI [suicidal ideation] w/ plan to stab self w/ screwdriver 2 days ago [because of] argument w/ boyfriend." (AR 663.) A note dated November 20, 2007, describes Plaintiff's "baseline" as "sadness, hopelessness, mood swings, insomnia." (AR 673.) A form in Exhibit 11F dated July 14, 2008, summarizes that Plaintiff "continues w/ active depression and anxiety." (AR 677.) (Exhibit 14F contains Dr. Bucardo's own treatment notes, discussed above.) The ALJ also ignores other evidence outside of Exhibits 10F, 11F and 14F suggesting serious mental difficulties, including an August 2003 involuntary hospital admission for "expressing suicidal ideation" (AR 310) and a September 2006 progress note stating that Plaintiff was "self-conscious and anxious" and her "low skill level in the area of assertiveness . . . interferes with obtaining and retaining work." (AR 595.) This medical evidence suggests that Plaintiff has chronic mental health problems, and refutes the ALJ's assertion that "[a]ll of the mental health treatment records are consistently benign." (AR 16.)

Remand is warranted for the Commissioner to reconsider Dr. Bucardo's opinion.[2] In light of ALJ Varni's vituperative characterization of Dr. Bucardo's opinion, the Court recommends that the Commissioner assign the case to a different ALJ on remand. See Sarchet v. Chater, 78 F.3d 305 (9th Cir. 1996) (noting that "[t]he tone of the [ALJ's] opinion

---

[2] The Court also notes that the consultative psychiatric examiner did not examine Plaintiff's mental health records. (AR 685-92.) In light of the extensive record and the episodic nature of Plaintiff's impairment, on remand it may be helpful to order another psychiatric examination by a practitioner who has analyzed Plaintiff's records. See Edler v. Astrue, 2010 WL 3034522, at *2 & n.3 (9th Cir. Aug. 3, 2010) (holding that ALJ erroneously rejected treating physician's opinion by relying "on selective citations to periodic improvements in [the claimant's] treatment records that are fully consistent with [the claimant's] bipolar disorder, a disease that is, by definition, episodic" (citing Orn, 495 F.3d at 630)) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

suggests that she may have an unshakeable commitment to the denial of this applicant's claim" and recommending that the case be transferred to a different ALJ on remand).

### C. The ALJ Did Not Properly Evaluate Plaintiff's Credibility.

Plaintiff argues that the ALJ did not provide legally sound reasons for discounting her credibility. (JS at 14-20, 22.) The Court agrees.

#### 1. Pertinent Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 & n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

#### 2. Analysis

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR

15.) The ALJ offered several reasons for discounting Plaintiff's credibility (some of which were incorporated by reference from the Prior Decision). The Court finds none of them to be clear and convincing.

First, the ALJ faulted Plaintiff for characterizing her medications as not entirely beneficial. The ALJ noted that Plaintiff at first "adamantly denied any benefit from the medications she was taking" but later admitted "it was of minimal benefit." (AR 14.) The ALJ concluded "[t]his is incredible in light of the long and faithful prescription and use of the same medications. There are multiple medications in the psychotropic armamentarium which could be used if those which the claimant has taken for so long ever proved ineffective or possessive of untoward side effects." (AR 14-15.) Noting that Plaintiff "admitted the medications helped" at the initial hearing, the ALJ concluded Plaintiff "is trying to further reduce and diminish her capacity for work activities when there is no evidence in the file her condition has worsened." (AR 15.) The Court finds numerous flaws with the ALJ's analysis. First, the ALJ's suggestion that Plaintiff might benefit from other medications in the "psychotropic armamentarium" if her current medications are less than ideal is mere supposition. He points to no medical evidence suggesting that Plaintiff might benefit from other medications. An ALJ may not substitute his own medical judgment for that of a medical professional. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

Next, the ALJ unfairly characterized Plaintiff's testimony as "adamantly den[ying] any benefit from the medications she was taking" (AR 14), and failed to consider Plaintiff's comments about the efficacy of her medications in light of the medical record. At the second hearing, Plaintiff stated that she was "[a] little bit but not that much" better under her current treatment regime, and noted that she "still take[s] the same medicine" and "still [has] the problems." (AR 51.) In the Court's view, this testimony cannot be fairly considered an adamant denial of any benefit from her medications. In fact, this testimony is very similar to Plaintiff's testimony at the first hearing, when, in the ALJ's words, she "admitted the medications helped." (AR 15.) At the first hearing, Plaintiff first stated that her medications did not help, but then said they helped "[s]omewhat." (AR 62.) Plaintiff explained that her

11

physicians were adjusting the dosage of her medications "because [she] had problems concentrating." (AR 63.) Moreover, Plaintiff's comments must be considered in light of the record as a whole. As mentioned above, in December 2008 Dr. Bucardo wrote that Plaintiff's "Current Baseline" was "Depression, mood swings and agitation episodes about once per week. Nightly insomnia." (AR 703.) Despite these episodes, Dr. Bucardo consistently wrote that the efficacy of Plaintiff's medications was stable. (AR 695, 697, 701.) In light of Plaintiff's continuing difficulties with her episodic mental impairment, some ambiguous testimony about the perceived efficacy of her medications does not clearly and convincingly undermine her credibility.

In the Prior Decision, the ALJ wrote that, at a psychiatric examination in August 2004, Plaintiff's "performances varied in their validity and were suggestive of malingering. The examiner reported that [Plaintiff] did not exert optimal effort on a consistent basis." (AR 81 (citing Exhibit 8F at 1 [AR 625]).) Although lack of effort during testing may be a valid reason to discount a claimant's credibility, the record does not contain any primary evidence from this August 2004 examination. The ALJ cites only a "Case Analysis" form discussing this examination. (AR 625-26.) Moreover, the August 2004 examination occurred before Plaintiff filed the July 2005 applications at issue in this case. The Court therefore does not find Plaintiff's performance on the August 2004 examination a clear and convincing reason to discount her current credibility.

The ALJ also made several references to Plaintiff's daily activities. (AR 12, 13, 15, 81, 82.) To the extent the ALJ intended these remarks as a justification for discounting Plaintiff's credibility, the Court disagrees. Although an ALJ may legitimately discount a claimant's credibility if her daily activities contradict her other testimony or demonstrate a capacity to engage in substantial gainful activity, see Orn, 495 F.3d at 639, here the ALJ made no such findings regarding plaintiff's daily activities. On the current record, plaintiff's daily activities do not clearly and convincingly undermine her credibility.

Finally, the ALJ may have also intended his references to a lack of objective evidence supporting Plaintiff's reports of visual impairments and inappropriate somnolence as reasons

for discounting her credibility. (<u>See</u> AR 16.) However, a lack of objective evidence supporting Plaintiff's allegations about these impairments is not a clear and convincing reason to discount the credibility of Plaintiff's subjective complaints about her mental impairment.

Remand is warranted for the Commissioner to reassess Plaintiff's credibility.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding for further proceedings in accordance with law and with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: <u>January 6, 2011</u>              <u>      /s/ John E. McDermott      </u>
                                                            JOHN E. MCDERMOTT
                                                  UNITED STATES MAGISTRATE JUDGE